**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **REAUX MEDICAL INDUSTRIES, LLC,** § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:09-CV-1582-M |
| § | |
| **STRYKER CORPORATION and** § | |
| **RACING OPTICS, INC.,** § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the Hon. Barbara M.G. Lynn's Standing Order of Reference, entered December 22, 2009, this case has been referred to the United States Magistrate Judge for pretrial management. Reaux Medical Industries, LLC ("Plaintiff"), has sued Stryker Corporation and Racing Optics, Inc. ("Racing Optics") for infringement of its '039 Patent. Before the Court for findings and recommendation is Plaintiff's "Motion to Dismiss Inequitable Conduct Counterclaims and Motion to Strike Inequitable Conduct Affirmative Defenses Asserted by Defendant Racing Optics" ("Motion," doc. 26), filed November 13, 2009. The Court has considered the Motion, Racing Optics' Response (doc. 32), filed December 14, 2009, and Plaintiff's Reply (doc. 40), filed December 28, 2009.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. FED.R.CIV.P. 12(b)(6). Generally, to avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). However, allegations of fraud must meet the particularity requirements of Rule 9(b): "a party must

state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b). Rule 12(f) permits the court to strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). Motions to strike are a drastic remedy and generally are disfavored. 5C Wright & A. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2004).

Claims of inequitable conduct fall within the strictures of Rule 9(b). *See Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Federal circuit law governs the question of whether a pleading states a claim for inequitable conduct. *Id.* "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the [Patent and Trademark Office] during prosecution." *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1326 (Fed. Cir. 2009) (quoting *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). The elements required to prove inequitable conduct are: an affirmative misrepresentation of material fact, failure to disclose material information, or the submission of false material information, coupled with an intent to deceive the Patent and Trademark Office ("PTO"). *Id.* Information is material "when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Id.* "To satisfy the intent to deceive element of inequitable conduct, the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1374-75 (Fed. Cir. 2006) (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part)). "[I]ntent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct." *Id.* at 1375.

"[D]irect evidence of intent is unavailable in most cases and unnecessary in any event." *Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1235 (Fed. Cir. 2005). "[I]ntent may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the PTO's consideration of the patent application." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

Plaintiff seeks dismissal of Racing Optics' inequitable conduct claims largely based upon the Federal Circuit's recent holding that "inequitable conduct . . . must be pled with particularity under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1326 (Fed. Cir. 2009). The circumstances in Rule 9(b) must be pleaded in detail---this means identification of the "who, what, when, where, and how" of the material misrepresentation or omission committed before the PTO. *Exergen*, 575 F.3d at 1327 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). Plaintiff contends that Racing Optics' inequitable conduct allegations lack the specificity required to satisfy the strict pleading standard. (Mot. at 13.) Racing Optics responds that Plaintiff is fully on notice of the nature of the inequitable conduct claims that it asserts in full compliance with Rule 9(b) and that Plaintiff's quarrel is not with defective pleadings but with how the Court should ultimately determine the numerous facts alleged. (Resp. at 1.)

## Analysis

Racing Optics alleges that the patent inventor, Mr. Brian Reaux ("Mr. Reaux"), committed inequitable conduct during the patent application process. Accordingly, the "who" requirement is clearly satisfied in this case. The Court will address first Plaintiff's contentions that Racing Optics' claims regarding an unidentified medical mask product should be dismissed or stricken.

3

**Medical Mask Product**

Racing Optics alleges that before August 19, 2003, a number of companies had made and sold a medical face cover with an attached single layer eye shield (the "medical mask product") and that before June 19, 2003, it was common knowledge in the medical community in which Mr. Reaux was a member that a medical mask product existed that was a device that directly coupled a single layer eye shield to a face cover along a lower portion of the lens of the eye shield. (Countercl. ¶¶ 84-85.) Racing Optics also alleges that Mr. Reaux was aware of the medical mask product from his own experience in the medical community ( *Id.* ¶ 103.) Racing Optics further alleges that Plaintiff failed to disclose to the Examiner that the medical mask product coupled "an eye-shield to a face cover along a lower portion of the lens wherein the face cover is configured for covering the nose and mouth of a wearer, the face cover being air permeable to allow the passage of air therethrough to facilitate breathing when worn over the wearer's nose." (Countercl. ¶ 106.)

Plaintiff points out that the allegations regarding the medical mask product are conclusory and unsupported by specific facts: Mr. Reaux's familiarity with the product allegedly is based on common knowledge; no product identification is given for the medical mask product; no company name or manufacturer is identified; and no explanation of the materiality of such product is given. (Mot. at 5.) Plaintiff contends that the facts alleged do not plausibly establish that Plaintiff withheld material prior art references with respect to the unidentified medical mask product or had the requisite intent to deceive the PTO. (Mot. at 3-5.) Racing Optics failed to adequately address these concerns in its response to the Motion.

The Court agrees that Racing Optics' allegations regarding a medical mask product fail to comply with Rule 9(b). The Counterclaim specifies only the "who" and not the "what, when, where,

and how" of the allegedly inequitable conduct. The pleading thus fails to provide the required particularity to give notice to the other party of the facts on which this claim is premised. Accordingly, the Court concludes that the Counterclaim is inadequately pled with respect to the medical mask product. The Court will reserve until later in these findings what action is required with regard to the medical mask product pleading deficiencies. Next, the Court will consider Plaintiff's contention that Racing Optics' pleadings with respect to the Racing Optics Products fails to satisfy the strict pleading standard.

### Racing Optics Products

According to Plaintiff, Racing Optics' allegations regarding its own products are insufficient to identify the products, materials, and embodiments; no specifics are provided regarding Mr. Reaux's knowledge about the unidentified products or materials; and no specific product identification is given by Racing Optics for its own products to support the inequitable conduct claim. (Mot. at 20.) Plaintiff argues that rather than a "product identifier," Racing Optics used terms such as: "a tear-off stack," "tear off stacks," "numerous embodiments of the Racing Optics tear-offs used in various applications," "tear-off material," "laminated material," "tear-offs for goggles and helmets," and "a product." (*Id*. at 20-21.)

Notably, at ¶ 79 of the Counterclaim, Racing Optics identifies three products that it relies upon to support its claim of inequitable conduct: a "Tri-Color" sample pack for use on helmets, a portion of a windshield stack consisting of a four mil lower layer and two mil upper layers and Oakley, Inc. ("Oakley") goggles with a Racing Optics tear-off stack that consisted of a laminated stack that was then precut and attached to the Oakley goggles (the "July 2003 Racing Optics tear-off stacks"). Plaintiff attaches to the Motion an Invoice for the July 2003 Racing Optics tear-off stacks

5

that Plaintiff purchased from Racing Optics (the "Invoice"). Racing Optics contends that the allegations of its Counterclaim are sufficient to give Plaintiff notice of its claims, as demonstrated by Plaintiff's production of the Invoice which is now part of the record.

When considering a 12(b)(6) motion, courts must consider the complaint in its entirety, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (citations omitted). Racing Optics is not required to offer evidence in support of its Counterclaim. *See In re Papst Licensing, GMBH Patent Litig.*, 174 F.Supp.2d 446, 448 (E.D. La. 2001). As the Court has previously noted, the "Who" element is satisfied:

> Reaux did not disclose to the PTO the fact that the July 2003 Racing Optics tear-off stacks contained an embodiment that comprised an eye shield with "at least two layers of flexible material comprising a lens and at least one lens protector film layer wherein the lens has a greater thickness than any single lens protector film layer" and that the eye shield was cut for attachment to a face cover.

(Countercl. ¶ 106.) Similarly, the "When" element is satisfied by Racing Optics' allegations:

> At a time when he was prosecuting his own patent application without assistance from counsel, Reaux stated to the PTO on December 29, 2008: Applicant has now added new claims directed to a method of forming an eye covering device. Specifically, new independent claim 1 now calls for laminating at least two layers of flexible material together and then cutting the laminated layers into a desired shape 10 to form an eye shield, and wherein at least a portion of the at least two layers
> is transparent to allow visual perception through the at least two layers forming the eye shield, and wherein the at least two laminated layers are releasable so that one of the layers may be selectively removed from the other. . . . Such a method of forming an eye shield is not shown in the cited combination of Wilson et al. (U.S. Patent No. 6,536,045) and Reese et al (U.S. Patent No. 6,213,125). The optical stack of Wilson et al. does not form an eye shield but is instead applied to a rigid eye shield, with the bottom surface of the optical stack having an exposed strip . . . of an adhesive material . . . ."

(Countercl. ¶ 107.) When Plaintiff made this statement to the examiner, Plaintiff was aware of the July 2003 Racing Optics tear-off stacks because he had purchased them from Racing Optics. The third product on the Invoice had been cut from a laminated stack that consisted of a 4 mil lens with four 2 mil lenses attached. The PTO required Plaintiff to include a limitation to his eye shield of "one lense protector film layer wherein the lens has a greater thickness than any single lens protector film layer." Racing Optics alleges that Plaintiff failed to inform the examiner that Racing Optics had a stack of flexible lenses wherein one layer had a greater thickness than any single lens protector, and that if the July 2003 Racing Optics tear-off stacks art had been revealed, the PTO would not have approved the '039 Patent.

The following allegations specify "How" and "Why" the Racing Optics products are material to the '039 Patent and not cumulative of other prior art already before the PTO:

> 110. The July 2003 Racing Optics tear-off stacks are prior art to the '039 Patent at least under 35 U.S.C. §102(a), and the Racing Optics tear-offs sold before June 18, 2003, or June 18, 2002, are prior art to the '039 Patent under at least 35 U.S.C. §102(b).
>
> 111. The July 2003 Racing Optics tear-off stacks are material to the '039 Patent because at least one comprised "at least two layers of flexible material comprising a lens and at least one lens protector film layer wherein the lens has a greater thickness than any single lens protector film layer."
>
> 112. The July 2003 Racing Optics tear-off stack is material to the '039 Patent because it was made by "laminating at least two layers of flexible material together and then cutting the laminated layers into a desired shape to form an eye shield, the at least two layers of flexible material comprising a lens and at least one lens protector film layer wherein the lens has a greater thickness than any single lens protector film layer."
>
> 113. The July 2003 Racing Optics tear-off stacks also are material to the '039 Patent because its eye shield was cut for attachment to a face cover (such as a helmet) "along a lower portion of the lens wherein the face cover is configured for covering the nose and mouth of a wearer, the face cover being air permeable to allow the

7

> passage of air therethrough to facilitate breathing when worn over the wearer's nose or mouth."
>
> 114. The July 2003 Racing Optics tear-offs are not cumulative of the Wilson '045 Patent, because Wilson does not explicitly disclose a tear-off stack having a bottom layer with a thickness of 4 mils and multiple upper layers each having a thickness of 2 mils.

(Countercl. at ¶¶ 110-114.) In addition, at ¶¶ 100-115, Racing Optics provides a consistent set of allegations that disclose both its theory of inequitable conduct and the circumstances from which the trier of fact can infer that Plaintiff allegedly violated his duty of candor to the PTO.

After reviewing the Amended Answer and Counterclaim and the Invoice, the Court finds that Racing Optics has sufficiently provided the factual details required by *Exergen* to plead inequitable conduct in a patent case. These allegations need not be a "smoking gun," but rather sufficient grounds to infer the requisite knowledge and intent. *Tellabs*, 551 U.S. at 24. Applying this standard to Racing Optics' pleadings, the Court finds that Racing Optics provides facts that establish a reasonable basis to allege that Plaintiff had knowledge of the Racing Optics' products which constitute the prior art references at issue, and that the trier of fact potentially can infer Mr. Reaux had the intent to withhold these references from the PTO.

The fact that Racing Optics uses the term "July 2003 Racing Optics tear-off stacks" to refer to more than one of its products is not fatal to its pleading. Both the Counterclaim and the Invoice sufficiently identify three products that Mr. Reaux ordered from Racing Optics. Racing Optics alleges that at least one of the three samples it sent Plaintiff comprised "at least two layers of flexible material comprising a lens and at least one lens protector film layer wherein the lens has a greater thickness than any single lens protector film layer." Racing Optics further alleges that this multi-layer product is material because the Patent Examiner required the '039 Patent to include a

limitation to the eye shield of "one lens protector film layer wherein the lens has a greater thickness than any single lens protector film layer." According to Racing Optics, Mr. Reaux should have revealed his knowledge of the product to the Patent Examiner, and his failure to do so constitutes bad faith.

Plaintiff has sufficient notice to enable it to give meaningful responses, and Racing Optics has alleged a sufficient factual basis to warrant the allowance of discovery on the inequitable conduct counterclaim insofar as it is based upon the July 2003 Racing Optics tear-off stacks. To the extent that Racing Optics has failed to sufficiently identify the medical mask product in its Amended Counterclaim, this defect does not warrant dismissing the Amended Counterclaim with prejudice or striking the pleading. The District Court should grant Racing Optics leave to file an amended pleading correcting this defect.

## Recommendation

Plaintiff's Motion to Dismiss Racing Optics' Amended Counterclaim and Motion to Strike should be DENIED. Racing Optics should be granted leave to file, within twenty days, a Second Amended Counterclaim.

**IT IS SO RECOMMENDED**, March 15, 2010.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).