**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **REAUX MEDICAL INDUSTRIES, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-1582-M** |
| | § | |
| **STRYKER CORPORATION and** | § | |
| **RACING OPTICS, INC.,** | § | |
| **Defendants.** | § | |

## FINDINGS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred the issue of claim construction to the United States Magistrate Judge for hearing, findings, and recommendation on the disputed claim construction. After a hearing and after further consideration of the evidence and arguments of the parties, the Court makes the following findings and recommendation on the issue of claim construction.[1]

## BACKGROUND

Initially, Reaux sought broad claims directed to a face and eye covering device for use during surgery. (Defs.' App. to Opening Br. at 23-30, 48-53 ("Defs.' App.")) Reaux amended its claims many times over a number of years in an attempt to distinguish cited prior art, and, when its device claims were finally rejected, Reaux added new claims directed to a method of forming an eye covering device and then directly attaching the eye shield to a face shield mask along the lower portion of the lens of the eye shield. (Defs.' App. at 269-76.)

---

[1] In accordance with the Scheduling Order in this case, the parties identified the terms and phrases from the asserted claims that they contend the Court must construe and submitted their proposed constructions. Following briefing, the Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

The examiner stated his reasons for allowance:

> Independent claim 37 is considered allowable because the prior art fails to disclose the ordered process of laminating a lens and a lens protector together, then cutting the laminated product, and then directly attaching the product (eye shield) to a face shield/mask along a lower portion of the lens of the eye shield. Note that the prior art teaches the lens protector(s) being laminated to the lens (and indirectly being attached to a face shield).

(Defs.' App. at 287.) Reaux's process patent was approved ("the '039 Patent"). (Defs.' App. at 268-76.) Reaux claims Stryker and Racing Optics infringed the '039 Patent.

## LEGAL STANDARDS

Claim construction is a matter of law for which the Federal Circuit Court of Appeals provides guidance. *Markman*, 52 F.3d at 979. A court must consider the claims, the specifications, and the prosecution history. *Id.* The "bedrock principle" of patent law is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). *See also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[Courts] look to the words of the claims themselves . . . to define the scope of the patented invention."). Accordingly, an invention must be limited to what is described in the claims. *Id.*

Generally, claim terms should be given their "ordinary and customary" meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The question for claim construction, therefore, is how a person of ordinary skill in the art would have understood the term or phrase in question. *Id.* "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire

patent, including the specification." *Id.* However, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Importantly, claim terms are normally used consistently throughout a patent, and thus "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Differences among claims may also be revealing. For example, "the presence of a dependant claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1315.

Beyond the language of the claims themselves, the specification is considered the "best source for understanding a technical term." *Id.* at 1315 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998)). By statute, inventors are required to describe their claimed invention in "full, clear, concise, and exact terms" in the specification. 35 U.S.C. § 112, ¶ 1. Although terms are usually given their "ordinary and customary" meaning, an inventor may act as his own lexicographer in defining a claim term. When a specification reveals a special definition for a claim term, or limits the term in a way that differs from its otherwise commonly understood meaning, that definition or limitation governs interpretation of the term. *Phillips*, 415 F.3d at 1316. The "patentee's lexicography must, of course, appear with reasonable clarity, deliberateness, and precision before it can affect the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). *See also Merck & Co. v. Teva Pharms, USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) ("When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express

that intent in the written description."). In such a case, the patentee must demonstrate an intent to deviate from the ordinary and accustomed meanings of a claim term by "redefining the term or characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1304 (Fed. Cir. 2003). A court should not construe claim terms to encompass alternative embodiments described in a specification when including the alternative embodiments would contradict the actual language used in the claims. *See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc*., 529 F.3d 1364, 1373 (Fed. Cir. 2008). The claim, rather than the specification, controls when a patent specification includes a description that lacks a feature which the claim recites. *Schoenhaus v. Genesco, Inc*., 440 F.3d 1354, 1359 (Fed. Cir. 2006). When the claim fails to describe an alternative, the Patent and Trademark Office ("PTO") is deprived of the opportunity to consider whether the alternative was patentable. *See Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1108 (Fed. Cir. 1996).

Courts may additionally consider the prosecution history of the patent-in-suit. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. Thus, a prosecution history that reveals an inventor has limited an invention during the course of the prosecution can indicate that the scope of a claim is narrower than it would be otherwise. *Id*.

Finally, when the references and the patentee's invention are easily understandable, expert explanatory testimony is unnecessary. *See Union Carbide Corp. v. American Can Co*., 724 F.2d 1567, 1573 (Fed. Cir. 1984). A court may use extrinsic evidence to construe a claim only if the claim language remains genuinely ambiguous after the court has considered the intrinsic evidence.

*Id.* "[W]here the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." *Vitronics*, 90 F.3d at 1584. "[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005). Importantly, the inventor's or his patent attorney's subjective testimony as to the meaning of the claim terms should not affect the court's claim construction. *Vitronics*, 90 F.3d at 1584. *See also Markman*, 52 F.3d at 983 ("the testimony of [the inventor] and his patent attorney on the proper construction of the claims is entitled to no deference.")

## ANALYSIS

The parties have requested the Court to construe certain terms and phrases found in the asserted claims of the patent-in-suit. The parties have been unable to agree on a single set of disputed claim limitations. For certain claim phrases, Defendants proposed definitions for longer phrases, but Plaintiff proposed definitions for the constituent parts of the longer phrases.

Plaintiff faults many of Defendants' proposed constructions as simply repeating the defined term without explaining what is meant. In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning. *See Vitronics*, 90 F.3d at 1582. Although claims are interpreted in light of the specifications, this "does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). For example, limitations from a preferred embodiment described in the specification should not be read into the claim language. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Extraneous limitations, meaning "a limitation read into a claim from the specification wholly apart from any

need to interpret what the patentee meant by particular words or phrases in the claim" are improper.

*E.I. du Pont de Nemours v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).   In other

words, the specification should never trump the clear meaning of the claim terms.  *Id*.

The Court now addresses each disputed term or phrase in turn in accordance with the

principles previously noted.

## Disputed Language in Claim 1[2]

Claim 1, Dispute 1:    A method of forming **a face and eye covering device** comprising:

Plaintiff's proposed construction:

A protective garment placed over the face and eyes of the wearer,
such as a hood cover that fits over the wearer's head.

Defendants' proposed construction:

Claim preamble language referring to a device for covering the face and eyes

When a court considers whether a preamble limits a claim, the court analyzes the preamble

to ascertain "whether it states a necessary and defining aspect of the invention, or is simply an

introduction to the general field of the claim."  *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d

1331, 1343 (Fed. Cir. 2006); *accord Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1366

(Fed. Cir. 2010).  "A term is often limiting when the patentee has relied on it during prosecution to

distinguish prior art, as such reliance demonstrates that the feature disclosed in the preamble is

necessary to the patentability of the claim."  *Hearing Components*, 600 F.3d at 1366 (citation

omitted). "Absent clear reliance on the preamble in the prosecution history, or in situations where

---

[2]  The disputed language is indicated by bold print.

it is necessary to provide antecedent basis for the body of the claim, the preamble generally is not limiting." *Symantec*, 522 F.3d at 1288 (internal citation and quotation marks omitted).

Plaintiff bases its proposed construction on the premise that Defendants' accused products more closely resemble "hooded" surgical protective wear. A court must construe a claim in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device. *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). "[O]nly *after* the claims have been *construed without reference to the accused device* . . . the claims, as so construed, are applied to the accused device to determine infringement."

The Court finds that the preamble does no more than focus the reader on the process or method of invention that is being claimed and does not affect the scope of the claim. *See Bristol-Myers Squibb Co. v. Ben Venue Labs*, 246 F.3d 1368, 1373 (Fed. Cir. 2001). Although Plaintiff attempts to redefine the patented process as one for constructing a hood because the accused product is in the nature of a hood, the plain and ordinary meaning in the art and the prosecution history do not support Plaintiff's construction of the preamble. In this case, the preamble needs no construction. The Court recommends that the District Court give the preamble its plain and ordinary meaning in the art, as follows:

> claim preamble language referring to a process for making a device
> for covering the face and eyes

Claim 1, Agreed Construction 1: The District Court should construe the language in accordance with the parties' agreement as follows:

> by compressing at least two layers of flexible material together with
> heat and/or an adhesive bonding material (e.g., a glue)

Claim 1, Dispute 2:

> **and then cutting the laminated materials into a desired shape to form an eye shield**

Plaintiff's proposed construction:

> shearing the compressed flexible materials
>
> to make a transparent protective lens

Defendant's proposed construction:

> the single continuous step of cutting through all of the laminated layers to generate the desired shape that forms an eye shield; the eye shield is a distinct component that shields the eyes

Plaintiff provides no intrinsic evidence in support of its proposed construction which adds a term, "transparent protective lens," which is not used to describe the eye shield in the claims. The term "shearing" as a substitute for "cutting" is confusing and unnecessary. Defendants point to the following specification in support of their construction that includes "the single continuous step of cutting through all of the laminated layers to generate the desired shape that forms an eye shield." Specification:"The shield may be preformed by laminating the lens and lens protective layers together in a continuous, uncut length that is then cut into the desired shape." (Defs.' App. at 19; 3:51-53.) While this intrinsic evidence helps clarify the claim, the Court does not find that the cutting step requires one single continuous uninterrupted cutting motion to form the eye shield. It is clear from the "is then" that cutting the eye shield out of the laminated materials is the next step in the process and that the shaping and formation of the eye shield is the result of that step. The laminated layers are what forms a continuous uncut length that is then cut into shape to form the eye shield. The single continuous cutting action language is not required by the specification. However, Defendants' construction that the eye shield is a distinct component that shields the eyes is a proper

construction of the step of the process that results in an eye shield and will help the jury understand the cutting step of the process. The intrinsic evidence, along with the plain and ordinary meanings of the words in the art, lead the Court to recommend that the District Court construe the claim language as follows:

> and then cutting through all of the laminated layers to generate the desired shape that forms an eye shield; the eye shield is a distinct component that shields the eyes

Claim 1, Dispute 3:

> **the at least two layers of flexible material comprising a lens and at least one protective film layer**

Plaintiff's proposed construction:

> the laminated layers of flexible material have a one peelable layer and one nonpeelable lens layer

Defendants' proposed construction:

> the laminated layers consist of one lens layer and at least one layer that protects the lens layer

Plaintiff does not provide intrinsic evidence or dictionary definitions in support of introduction of the words "peelable layer" and "nonpeelable lens layer" and construing "lens protective film layer" as "peelable layer." The terms peelable and nonpeelable do not appear in the claims nor in the intrinsic evidence. Their introduction into the claim is not warranted. Defendants' proposed construction keeps the clear meaning of the claim in the art and simplifies it somewhat without changing its meaning. The Court recommends that the District Court construe the language as:

> the laminated layers consist of one lens layer and at least one layer that protects the lens layer

Claim 1, Dispute 4:

> wherein the **lens has a greater thickness than any of the single lens protector film layers**

Plaintiff's proposed construction:

> the nonpeelable base layer has a greater thickness than the peelable protective layer

Defendants' proposed construction:

> the lens layer has a greater thickness than any one lens protector film layer

Plaintiff does not provide intrinsic evidence or dictionary support for its proposed addition of "nonpeelable" and "peelable" layers. Defendants' proposed construction is fully supported. (Defs.' App. at 285.) The Court recommends that the District Court construe the language as:

> the lens layer has a greater thickness than any one lens protector film layer

Claim 1, Dispute 5:

> and wherein **at least a portion of the at least two layers is transparent to allow visual perception through the at least two layers**

Plaintiff's proposed construction:

> a portion of the laminated layers of flexible material can be seen through

Defendants' proposed construction:

> a portion of the at least two layers of flexible material can be seen through

Both constructions are similar. Plaintiff's proposed construction is consistent with the language of the construction this Court recommends in Claim 1, Dispute 3. This construction

simplifies the language and offers a better explanation of the plain and ordinary meaning in the art.

Therefore, the Court recommends that the District Court construe the language as:

> a portion of the laminated layers of flexible material can be seen through

Claim 1, Dispute 6:

> **forming the eye shield**

Plaintiff's proposed construction:

> making a transparent window of laminated flexible material that can be viewed through by the wearer of the protective garment

Defendants' proposed construction:

> the eye shield that results from the single continuous step of cutting through all of the laminated layers to generate the desired shape that forms an eye shield; the eye shield being a distinct component that shields the eyes

Both Plaintiff's and Defendants' constructions add language that is not supported by the evidence. The Court has previously found that Defendants' addition of "the single continuous step of cutting" language is not required. Plaintiff's introduction of the term "wearer of the protective garment" is unsupported by the record. The Court finds that the claim language "forming the eye shield" is clear from the context of the process and needs little construction and recommends that the District Court construe the language as:

> making the eye shield that results from the step of cutting through all of the laminated layers to form the desired shape that forms an eye shield; the eye shield being a distinct component that shields the eyes

Claim 1, Dispute 7:
> **and wherein the at least two laminated layers are releasable so that one of the layers may be selectively removed from the other**

Plaintiff's proposed construction:

> one protective layer can be peeled away from the base lens layer of
> the laminated flexible materials

Defendants' proposed construction:

> the at least two laminated layers can be released from each other so that a
> user may select to remove one laminated layer from the other laminated layer

Plaintiff again introduces the word "peeled" for which there is no support in the record.

Defendants' construction is supported by the intrinsic evidence. (Defs.' App. at 72.) The Court finds

that the District Court should adopt the following construction:

> and wherein the at least two laminated layers can be released from
> each other so that a user may select to remove one laminated layer
> from the other laminated layer

Claim 1, Dispute 8:

> and **directly coupling the eye shield to a face cover along a lower
> portion of the lens**

Plaintiff's proposed construction:

> attaching in direct connection to each other the covering material to the eye
> shield includes at least one connection along the lower edge of the eye shield

Defendants' proposed construction:

> directly connecting or fastening together the distinct eye shield component
> to a separate face cover component along a lower portion of the lens of the
> eye shield

Plaintiff refers to the specification referring to Figure 7, a hood, described as another

embodiment of a face and eye covering device. (Pl.'s Br., Ex. 12 at 21.) This specification does not

support Plaintiff's proposed construction because an opening is formed in the hood and a face shield

is coupled to the hood and positioned within the opening to thereby close off the opening. (*Id.*)

The specification requires a "face shield" in the opening and the hood in figure 7 shows an eye shield with reel assembly (figure 8), not directly coupled to the hood along a lower portion of the lens. Plaintiff's method patent is for formation of an eye shield that is fastened to the face shield along a lower portion of the eye shield. (*Id.*) Defendants' proposed construction is supported by the plain and ordinary meaning of the claim language in the art as well as intrinsic evidence. (Defs.' App. at 18.) "An eye shield 17 of the device 10 is coupled to the mask 12." This shows that the eye shield and the mask are separate components that make up the device. Plaintiff's proposed construction adds an unidentified term, "covering material," which is not mentioned in the claims or specifications of the '039 patent. The Court recommends that the District Court construe the language as:

> and directly connecting or fastening together the distinct eye shield
> component to a separate face cover component along a lower portion
> of the lens of the eye shield

Claim 1, Dispute 9:

> wherein **the face cover is configured for covering the nose and
> mouth of a wearer.**

Plaintiff's proposed construction:

> the covering material creates barrier between the nose and mouth of
> the wearer and the outside environment, such as when a hood
> configuration is worn over the head of the wearer

Defendants' proposed construction:

> a face mask designed and formed to lay over the nose and mouth of
> a wearer

Plaintiff's proposed construction introduces elements that are not included in the intrinsic evidence, such as "barrier between the nose and mouth of the wearer and the outside environment."

Defendants' proposed construction is consistent with the plain and ordinary meaning of the claim language. Configure means to "design, arrange, set up, or shape with a view to specific applications or uses." (Defs.' App. 361, 365.) Cover means to "lie over." (*Id*. 373.) Therefore, the face cover must be designed, shaped, or formed to lay over the nose and mouth. The specification teaches that this specific type of face cover is called a face mask. (*Id*. at 18.) The Court recommends that the District Court construe the language as:

> a face mask designed and formed to lay over the nose and mouth of
> a wearer

Claim 1, Dispute 10:

> **the face cover being air permeable to allow the passage of air**
> **therethrough to facilitate breathing when worn over the wearer's**
> **nose or mouth**

Plaintiff's proposed construction:

> the covering material filters air between the nose and mouth of the
> wearer and the outside environment, such as when a hood
> configuration is worn over the head of the wearer

Defendants' proposed construction:

> the face cover, as defined above, further is air permeable and allows
> for the passage of air through the face cover so that a wearer can
> breathe through the face cover when it is worn over the wearer's nose
> or mouth

Plaintiff refers to the entire specification of the patent, as well as extrinsic evidence. The Court need not consider Plaintiff's extrinsic evidence. Plaintiff's declaration, as well as those of Plaintiff's expert witnesses, are entirely conclusory and not supported by the patent history. To rely upon Plaintiff's extrinsic evidence and to adopt Plaintiff's construction would be to rewrite the claim language. Plaintiff is attempting to construe the method patent as the device patent that the PTO

rejected because of prior art.  It would not be helpful to the jury to add new language such as "filters" and "outside environment" when the plain and ordinary construction of the words conveys their meaning.  The Court recommends that the District Court construe the language as:

> the face cover is air permeable and allows for the passage of air through the face cover so that a wearer can breathe through the face cover when it is worn over the wearer's nose or mouth

## Disputed Language in Claim 2

The disputed language is:

**uniform coating of an optically clear adhesive**

Plaintiff's proposed construction:

> having a substantially consistent layer of adhesive

Defendants' proposed construction:

> having a uniform coating of an adhesive that is optically clear

Plaintiff, without pointing to any evidence to support this construction, would add the words "substantially" and "consistent."  Defendants correctly assert that when the claim language itself is clear on its face and not legitimately disputed, there is no need to construe the language.  *See Cent. Admixture Pharm. Serve. v.  Advanced Candia Solutions, P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007).  The language of the claim is clear on its face. The Court recommends that the District Court construe the language as:

> having a uniform coating of an adhesive that is optically clear

## Disputed Language in Claim 3

The disputed language is:

wherein the **adhesive covers generally the entire surface of the layers**

Plaintiff's proposed construction:

bonding layer is generally applied to the surface of the laminated layers

Defendants' proposed construction:

the optically clear adhesive generally covers the entire surface of each of the laminated layers

Plaintiff's proposed construction adds the new words "bonding layer" without citing to the portion of the record or other intrinsic evidence that would support the introduction of these words. Defendants' proposed construction gives the claim its ordinary meaning in the art. The Court recommends that the District Court construe the language as:

the optically clear adhesive generally covers the entire surface of each of the laminated layers

## Disputed Language in Claim 4

The disputed language is:

**grasping portion that is provided to facilitate removal of said at least one lens protector film layer**

Plaintiff's proposed construction:

portion of the peelable protective layer can be grabbed for easier removal

Defendants' proposed construction:

the grasping portion is provided to make easier the removal of a lens protector layer from the remainder of the laminated layers

Plaintiff's proposed construction would add the new non-recited words "peelable protective layer." Defendants' proposed construction is consistent with the plain and ordinary meaning in the

art and the previous use of removable in the record. The Court recommends that the District Court construe the language as:

> the grasping portion is provided to make easier the removal of a lens protector layer from the remainder of the laminated layers

### Agreed and Disputed Language in Claim 5

The parties agree to the construction of "textured surface" as "a rough tactile exterior part or layer" and to the construction of "grasping and removing" as "to make grasping and removing easier." The Court recommends that the District Court construe this language in accordance with the parties' agreement.

The disputed claim language is:

> The method of claim 4 wherein: the grasping portion is provided with at least one of a textured surface or "**cut-out**" to facilitate "grasping and removing" of said at least one lens protector film layer of the at least two layers

Plaintiff's proposed construction:

> material that is cut back from or cut off to help distinguish between different peel-away layers

Defendants' proposed construction:

> something cut out or off from something else

Plaintiff's addition, without evidentiary support, of the new words "material," "cut back," and "different peel-away layers" would not help the trier of fact understand the claim. Defendants' plain meaning proposed construction is supported by the dictionary definition of "cutout." The Court recommends that the District Court construe the disputed language as:

> something cut out or off from something else

### Agreed and Disputed Language in Claim 6

The parties agree that "at least three layers of flexible material laminated together" should be construed to mean "three flexible layers compressed together with heat and/or an adhesive bonding material (e.g., a glue)." The Court recommends that the District Court adopt the parties' construction of the agreed language.

The disputed language is:

> The method of claim 1, wherein: there are "at least three layers of flexible material laminated together that are then cut into the desired shape to form the eye shield wherein **the at least three layers of flexible material comprises the lens and at least two lens protector film layers**.

Plaintiff's proposed construction:

> two or more layers of peelable protective layers compressed with the lens of the eye shield

Defendants' proposed construction:

> the at least three layers of flexible material include at least two lens protector film layers and one lens layer

Again Plaintiff adds new words which are unsupported by the evidence, "peelable" and "compressed." Most of the claim language is plain and unambiguous. The Court recommends that the District Court construe the language as:

> the at least three layers of flexible material include at least two lens protector film layers and one lens layer

## Agreed Language in Claim 7

The parties agree to the construction of the disputed language of claim 7 which provides:

> The method of claim 6, wherein: "the at least two lens protector film layers of the at least three layers has a projecting grasping portion that is provided to facilitate removal of said at least two lens protector film layers of the at least three layers, and wherein the grasping portion is provided with **indicia to facilitate distinguishing each of the layers**

The District Court should construe the language in accordance with the parties' agreement as:

> an indicator or marking that will allow for different layers to be shown or recognized

### Disputed Language in Claim 9

The disputed language is:

> The method of claim 1, further comprising: **providing a securing device for the eye shield for securing the eye shield to the head of a wearer**

Plaintiff's proposed construction:

> **providing**:

> to provide or make available

> **securing device** and **securing eye shield to the head of the wearer**:

> an object for firmly positioning the eye shield relative to the head of the wearer

Defendants' proposed construction:

> providing a mechanism for attaching the eye shield to the head of a wearer

Plaintiff provides no support for the addition of the words "firmly," positioning," and "relative." Plaintiff's intricate, two-part construction is not required given the simplicity of the disputed claim language. Defendants propose a construction that is supported by the record and consistent with the plain and ordinary meaning in the art. The Court recommends that the District Court construe the language as:

> providing a mechanism for attaching the eye shield to the head of a wearer

## **Disputed Language in Claim 10**

Dispute 1 in claim 10 is:

The method of claim 1, wherein: **the lens** of the at least two layers of flexible material **has a thickness of from about 3 mils to about 50 mils**

Plaintiff's proposed construction:

> the lens on the eye shield has a thickness of between 3 to 50 mils

Defendants' proposed construction:

> the eye shield lens has a thickness of between 3 to 50 mils

Plaintiff's proposed construction attempts to explain and define the term at issue. It makes the claim more understandable than Defendant's proposed construction. Accordingly, The Court recommends that the District Court construe the language as:

the lens on the eye shield has a thickness of between 3 to 50 mils

Dispute 2 in claim 10 is:

**and the at least one lens protector film layer** of the at least two layers of flexible material **has a thickness of from about 0.01 to about 3 mils**

Plaintiff's proposed construction:

> at least one peelable layer has a thickness between .01 to 3 mils in thickness

Defendants' proposed construction:

> the at least one lens protector film layer has a thickness between 0.01 to 3 mils in thickness

Plaintiff's proposed construction introduces the term "peelable layer" whereas the term "lens protector film layer is used more consistently in the claims and is more explanatory. Accordingly, The Court recommends that the District Court construe the language as:

the at least one lens protector film layer has a thickness between 0.01 to 3 mils in thickness

## Agreed Language in Claim 11

The Court recommends that the District Court construe the terms in Claim 11 in accordance with the parties' agreement as follows:

"sterilized" means "being substantially free of living microorganisms;"

"formed from sterile materials" means "formed of materials that are substantially free of living microorganisms;" and "for use in a sterile environment" means "an object to be used in a place that is substantially free of living microorganisms."

## Agreed Language in Claim 12

The Court recommends that the District Court construe the term in Claim 12 in accordance with the parties' agreement as follows:

The method of claim 1, wherein: the eye shield is **disposable** means

designed to be used once and thrown away

## Disputed Language in Claim 13

The disputed language is:

the method of claim 1, wherein: the eye shield has **sufficient flexibility so that the eye shield is contourable**

Plaintiff's proposed construction:

the shape of the eye shield can be flexed or modified around an irregular curve or figure

Defendants' proposed construction:

the eye shield can be easily bent, manipulated, or flexed around an irregular curve or figure

Plaintiff's proposed construction does not address the degree of flexiblity necessary to satisfy the term "sufficient." Defendants' contend that their proposed construction refers to dictionary definitions of "sufficient" which is "enough to meet the needs of a situation" and "flexibility" which is "capable of being bent or flexed." (Def.s' App. at 384, 376.) Defendants' proposed construction clearly and unambiguously defines the scope of the claim. The Court recommends that the District Court construe the language as:

> the eye shield can be easily bent, manipulated or flexed around an irregular curve or figure

### Disputed Language in Claim 14

The disputed language is:

> **the eye shield is directly coupled to the face cover by at least one of ultrasonic welding, thermal bonding, permanent adhesives, repositionable adhesives, stapling, riveting, stitching, hook and loop fasteners, snap fasteners, slots and pegs**

Plaintiff's proposed construction:

For **the eye shield is directly coupled to the face cover**, Plaintiff's proposed construction is:

> attaching in a direct connection to each other

For **ultrasonic welding, thermal bonding, permanent adhesives, repositionable adhesives, stapling, riveting, stitching, hook and loop fasteners, snap fasteners, slots and pegs**, Plaintiff's proposed construction is:

> the various ways of fastening that may couple the covering materials to the eye shield

Defendants' proposed construction:

the eye shield is directly connected or fastened together to the face cover along a lower portion of the lens of the eye shield, wherein the eye shield is directly connected or fastened together to the face cover by at least one of the following: (1) ultrasonic welding, (2) thermal bonding, (3) permanent adhesives, (4) repositionable adhesives, (5) stapling, (6) riveting, (7) stitching, (8) hook and loop fasteners, (9) snap fasteners, or (10) slots and pegs

Plaintiff's construction removes the various explicit examples by which the eye shield can be directly coupled to the face cover without explanation for substituting this vague phrase for specific fasteners. The claim is, for the most part, clear and unambiguous. The Court recommends that the District Court construe the language as:

the eye shield is directly connected or fastened together to the face cover along a lower portion of the lens of the eye shield, wherein the eye shield is directly connected or fastened together to the face cover by at least one of the following: (1) ultrasonic welding, (2) thermal bonding, (3) permanent adhesives, (4) repositionable adhesives, (5) stapling, (6) riveting, (7) stitching, (8) hook and loop fasteners, (9) snap fasteners, or (10) slots and pegs

### Disputed Language in Claim 15

The disputed language is:

the method of claim 1, wherein: **a portion of the eye shield extends over the face cover**

Plaintiff's proposed construction:

**a portion of** is construed to mean: some part of a larger or greater whole

**eye shield extends over the face cover** is construed to mean: the transparent window is stretched or extended

Defendants' proposed construction:

A portion of the eye shield extends over or overlaps the face cover

Plaintiff's unsupported construction includes the words "stretched" or "extended" without citation or explanation. Defendants propose that the language is clear, unambiguous, and understandable by the jury with only a slight modification. The Court agrees with Defendants' position and recommends that the District Court construe the language as:

> a portion of the eye shield extends over or overlaps the face cover

## Recommendation

For greater clarity, the Court has set out its recommended construction of the claims in a chart attached hereto as Exhibit "A." The Court recommends that the District Court construe the claims in accordance with this Court's findings.

**SO RECOMMENDED** this 23rd day of September, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).