IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| REAUX MEDICAL INDUSTRIES, LLC <br><br> Plaintiff, <br><br> v. <br><br> STRYKER CORPORATION, and RACING OPTICS, INC., <br><br> Defendants. | § § § § § § § § § § § § § Civil Action No. 3:09-cv-01582-M |

## MEMORANDUM OPINION AND ORDER

On November 8, 2011, the Court heard argument on Defendant Stryker Corporation's Motion for Summary Judgment [Docket Entry #172]. During the hearing and in its Order of November 10, 2011, the Court **DENIED** the Motion as to the issue of noninfringement and stated it would issue a separate order on the remainder of the claims [Docket Entry #239].

Stryker's Motion for Summary Judgment as to Reaux's state law claim for misappropriation of trade secrets is **DENIED**, and **GRANTED** as to Reaux's state law claim for unfair competition. There is no basis for Stryker to recover its attorney's fees at this time, so that request is also **DENIED**.

### I. Background

In addition to its claims of patent infringement, Plaintiff Reaux Medical Industries, LLC ("Plaintiff" or "Reaux") has brought state law claims for misappropriation and unfair competition. Both claims arise from the same series of events. Brian Reaux, the founder of Reaux, set out to develop a surgical eye protector with peel-away eye shields. Mr. Reaux sought out individuals and companies to help him develop the product. Mr. Reaux enlisted the support

of Precept Medical ("Precept"), which signed a nondisclosure agreement ("NDA") with Reaux on July 7, 2003. On that same date, Precept signed another NDA, with PCI Technologies ("PCI"). On August 25, 2003, PCI entered into another NDA, with Defendant Racing Optics. At the summary judgment hearing, the parties agreed that Precept terminated the NDA it signed with Reaux in October 2003, and that Racing Optics declined to enter into an agreement directly with Reaux.[1] Plaintiff contends that Reaux signed a "confidentiality sheet" with PCI in August 2003, but Plaintiff produced no evidence of the terms of such an agreement. Plaintiff provided an email from Brian Reaux to Michael Boyd at Precept that states "all (3) party [Mr. Reaux and two PCI representatives] talked about the Reaux Peel-Away at that time.under [sic] confidential info,also [sic] signed a confidential sheet with (PCI)."[2] The four NDAs that were made a part of the summary judgment record set forth procedures by which confidential information would be shared and protected among the parties, and each states that the agreement protects the confidential information for three years after the information was shared.

Plaintiff has alleged that Racing Optics breached its duty to maintain the confidential information it had been provided under the NDA with PCI. Specifically, Plaintiff claims that Racing Optics and Stryker entered into a secret relationship, and that Racing Optics received trade secrets about the Reaux product development that it and Stryker used in the development Stryker's products. Plaintiff alleges that the use of that information substantially reduced the time for Stryker's product development, giving it an unfair competitive advantage over Reaux.

---

[1] Transcript of Hearing [Docket Entry #247] at 90-92.
[2] Reaux Appendix B at 14 [Docket Entry #196]. This email is the only evidence of an agreement between Reaux and PCI, and Reaux stated at the hearing that it cannot provide the actual agreement. Transcript of Hearing [Docket Entry #247] at 93. Neither did it provide any evidence of the specific terms of that alleged agreement.

## II. Summary Judgment Standard

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists when a reasonable jury could find for the non-moving party.[4] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[5] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[6] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[7]

## III. Analysis

Plaintiff alleges that Defendants have improperly misappropriated Reaux's information regarding the "design, research and development efforts, and physical dimensions and specifications of Mr. Reaux's surgical lens product."[8] Stryker argues that Reaux's misappropriation and unfair competition claims are barred by the statute of limitations and are preempted by federal patent law.

---

[3] Fed. R. Civ. P. 56(c).
[4] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[6] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[7] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[8] Complaint at ¶ 44.

### A) Misappropriation of Trade Secrets

Stryker argues that Plaintiff has brought a claim for common law misappropriation, not misappropriation of trade secrets. That framing of the question has significant implications vis-à-vis which statute of limitation applies. Stryker argues that Plaintiff's Complaint does not use the word "trade secret" and that Plaintiff did not describe a claim for misappropriation of trade secrets until late in the discovery period. Stryker argues that Plaintiff's recent position comes too late and does not reflect its Complaint, and, therefore, Plaintiff should be prevented from asserting a claim for misappropriation of trade secrets.

Under Texas law, common law misappropriation has a two-year statute of limitations,[9] while misappropriation of trade secrets is subject to a three-year period.[10] Even more pertinent to the Court's inquiry is when the statute begins to run for each of those claims. A claim for misappropriation of trade secrets under Texas law must be brought within three years after the misappropriation is "discovered or by the exercise of reasonable diligence should have been discovered."[11] In contrast, a claim for common law misappropriation begins to accrue when the alleged misappropriation occurred, and the discovery rule "affords protection in only limited instances, applying in (1) cases of fraudulent concealment; and (2) when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable."[12] For Plaintiff to have a viable state law claim for either common law or trade secret misappropriation, it needs the benefit of the discovery rule because the alleged misappropriation began no later than February 2006, when Stryker first sold the product that allegedly used misappropriated trade secrets. Plaintiff did not file its Complaint until August 26, 2009, three and one-half years later, which on its face is outside the period of limitations for both types of misappropriation.

---

[9] Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 2011).
[10] Tex. Civ. Prac. & Rem. Code Ann. § 16.010 (Vernon 2011).
[11] *Id.*
[12] *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 524 (5th Cir. 2001).

The Court is of the view that the Complaint fairly put Defendants on notice that the information Plaintiff contended was misappropriated included trade secrets. Under Texas law, a "trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it."[13] Information concerning "design, research and development efforts, and physical dimensions and specifications" of a product, which is referenced in the Complaint, is within the realm of information that could be subject to trade secret protection.

Further, Defendants cannot be said to be unfairly surprised by Plaintiff's articulation of its claim as one for trade secrets misappropriation.[14] Stryker's interrogatory number six asked Plaintiff to provide detail on the factual basis for its claims of misappropriation and unfair competition. Plaintiff responded on March 24, 2010 that Racing Optics was provided detailed information about product configuration, cost quotes, and medical uses of Reaux's product.[15] In its Supplemental Responses, served on February 22, 2011, Plaintiff included specific information about six categories of information Plaintiff alleged were misappropriated (pricing information, supplier information, prototype examples, finalized mil thickness for a peel-away lens and a non-peel-away lens, mass production cone size, and window and roll size dimensions (ratios)).[16] The paper discovery thus clarified that the items misappropriated were trade secrets. Additionally, in a deposition taken on April 21, 2011, Steven Ross, Plaintiff's corporate designee, responded affirmatively to Defendants' question of whether Plaintiff alleged that any trade secrets were misappropriated.[17]

---

[13] *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996).
[14] It should be noted that the NDA Racing Optics signed with PCI stated that confidential information and trade secrets would be shared among the parties. Reaux Appendix B at 16 [Docket Entry #196].
[15] Stryker Appendix at 279-285 [Docket Entry #173].
[16] Stryker Appendix at 304-317 [Docket Entry #173].
[17] Deposition of Steven E. Ross at 271, Stryker Appendix at 417 [Docket Entry #173].

Having determined that Plaintiff claims for misappropriation of trade secrets, the Court must determine if the claim is potentially viable.  Stryker first argues that it is barred by the three year statute of limitations, which is not tolled by the discovery rule, because "by the exercise of reasonable diligence," Plaintiff should have discovered that Stryker was selling the accused product in February 2006.  Stryker's summary judgment evidence includes a product insert that shows its relationship with Racing Optics, and proves that it sold the product it developed with Racing Optics in February 2006.[18]  Plaintiff argues that Stryker and Racing Optics concealed their relationship, that it could not have reasonably discovered that Stryker was selling the accused product, since it was being sold outside of North Texas, where Mr. Reaux lived and worked, and that Mr. Reaux diligently monitored the Racing Optics website and found no evidence of a relationship between Racing Optics and Stryker until the website was updated in late 2008.  Plaintiff concedes that Stryker's products were first sold in North Texas in late 2008.

Based upon the evidence before the Court, there are material issues of fact with respect to the application of the discovery rule that must be decided by a jury.  The Court cannot determine as a matter of law that Reaux should have discovered the relationship between Racing Optics and Stryker before February 2009, within three years of when Stryker first sold the accused product.

Next, Stryker argues that Plaintiff's state law claims are preempted by federal patent law.  In *Kewanee Oil Co. v. Bicron Corp.,* the Supreme Court held that an Ohio trade secret law was not preempted by federal patent law.[19]  In so holding, the Supreme Court determined that the "extension of trade secret protection to clearly patentable inventions does not conflict with the

---

[18] Stryker Appendix at 188 [Docket Entry #173].
[19] *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 493 (1974).

patent policy of disclosure."[20]  The Court also noted that states "should be free to grant protection to trade secrets", unless Congress took express action prohibiting that.[21]

In *Multimin USA, Inc., v. Walco International, Inc.*,[22] a court in this District applied *Kewanee* and held that federal patent law does not preempt a claim under Texas law for misappropriation of trade secrets, which provides protection for a confidential relationship between the parties different from patent protection.

This Court agrees with the analysis of *Multimin*.  Plaintiff's claim for trade secret misappropriation relies on the confidential relationship between the parties working on the development of Plaintiff's product.  Therefore, Plaintiff's claim for misappropriation of trade secrets is distinct from its infringement claims and is not preempted by patent law.

Finally, Stryker contends that the categories of information allegedly misappropriated are not protectable as trade secrets.  Stryker notes that Racing Optics never entered into a NDA with Reaux, and when the NDA between Precept and Reaux was terminated in October 2003, the gap in the chain of NDAs eliminates any duty Racing Optics would have to Reaux as a result of the linkage of the series of NDAs.[23]  Although Plaintiff argues that Precept adhered to the terms of the agreement after it was terminated, that would not impact whether or not a duty to do so existed.[24]  After the date the Precept-Reaux agreement was terminated, there is insufficient

---

[20] *Id.* at 491.
[21] *Id.* at 493.
[22] *Multimin USA, Inc., v. Walco International, Inc.*, No. 4:06-CV-260-A, 2007 WL 1428445 (N.D. Tex. May 9, 2007).
[23] The evidence does not indicate that the NDA between PCI and Racing Optics was ever terminated.  However, the duty to protect confidential information under that NDA would only extend to Reaux if there was a link between Reaux and PCI.
[24] Transcript of Hearing [Docket Entry #247] at 92; Reaux Appendix B at 264-66 [Docket Entry #196].

evidence that Racing Optics had an obligation to Reaux, directly or indirectly through the other parties.[25]

However, from August 2003 to October 2003, NDAs were in place with a chain of all four parties, beginning with Reaux and ending with Racing Optics. Therefore, Racing Optics was under a duty to protect Reaux's confidential information received during that time, for three years after it received information pursuant to the NDA it signed.

Because there are disputed issues of material fact as to whether Defendant misappropriated Reaux's protectable trade secret, the Court denies summary judgment as to the state law claim of misappropriation of trade secrets.

### B) Unfair Competition

Plaintiff's claim of unfair competition is subject to a two-year statute of limitations, which requires suit within two years of the unfair competition.[26] Plaintiff maintains that Reaux could not have reasonably discovered that Defendants were engaging in unfair competition within that two year period. However, the discovery rule for unfair competition claims is very limited. It "affords protection in only limited instances, applying in (1) cases of fraudulent concealment; and (2) when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable."[27] Neither exception is claimed to be applicable here. Therefore, Reaux's claim for unfair competition is barred by the two-year statute of limitations. Stryker's Motion for Summary Judgment as to Plaintiff's claim of unfair competition is **GRANTED** and that claim is dismissed. The balance of Stryker's Motion is **DENIED**.

---

[25] As discussed above, Plaintiff's only evidence that could fill the gap in the chain is an email from Brian Reaux referencing a confidentiality agreement between Reaux and PCI. However, Plaintiff concedes it does not have the actual agreement, and there is no proof of its terms.
[26] Texas Civil Practice and Remedies Code § 16.003.
[27] *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 524 (5th Cir. 2001).

**SO ORDERED.**

February 27, 2012.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**