**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY – 3 2012

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| REAUX MEDICAL INDUSTRIES, LLC | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| STRYKER CORPORATION, and RACING OPTICS, INC., | § Civil Action No. 3:09-cv-01582-M |
| Defendants. | § |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard the evidence in the case, I will instruct you on the law you must

apply. First, I will give you some general instructions which apply in every case: for example,

instructions about burden of proof and how to judge the believability of witnesses. Then I will

give you some specific rules of law about this particular case, and finally I will explain to you

the procedures you should follow in your deliberations.

### GENERAL INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—

that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules

of law as I explain them to you. You have no right to disregard or give special attention to any

one instruction, or to question the wisdom or correctness of any rule I may state to you. You

must not substitute or follow your own notion or opinion as to what the law is or ought to be. It

is your duty to apply the law as I explain it to you, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

The Plaintiff in this case is Reaux Medical Industries, LLC, which I will refer to as "Reaux", "Reaux Medical", or the "Plaintiff". The Defendants are Stryker Corporation and Racing Optics, Inc. They are separate companies, but if I am referring to them both, I will call them "Defendants". If I refer to them individually, I will call them "Stryker" and "Racing Optics".

Certain questions require a "preponderance of the evidence" for an affirmative answer. This means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence means the amount of evidence that persuades you that a claim is more likely true than not true. Other questions require "clear and convincing evidence", which is a greater burden of proof, for an affirmative answer. This is meant it is highly probable that a certain fact is true. In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. Reaux has the burden of proof by a preponderance of the evidence on Questions 1-4, 6-9 and 12-17. Stryker and Racing Optics have the burden of proof by clear and convincing evidence on Questions 11a and 11b and Reaux has the burden of proof by clear and convincing evidence on Questions 5, 10, and 18.

You may have heard of the phrase "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should therefore put it out of your minds.

As I told you earlier, it is your duty to determine the facts. In doing so, you must consider only the evidence presented during the trial, including sworn testimony of the witnesses and the exhibits. Remember that any statements, objections, or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

During the course of the trial, you have heard counsel make objections to evidence. It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. You should not hold it against an attorney or his client because the attorney has made objections.

When I allowed testimony or other evidence to be introduced over the objection of any attorney, the Court was not, unless I expressly stated, indicating any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, or to the introduction of any other evidence, you are to disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if the witness had been permitted to answer. If I struck any testimony and instructed you to disregard it, you must do so. Your verdict must be based solely on the admitted evidence and testimony.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the

law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony. You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. You may be guided by the conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by any evidence contrary to the testimony.

In weighing the testimony of a witness, you should consider the witness's motive; any bias or prejudice the witness may have; the witness's demeanor or manner while testifying; the witness's interest, if any, in the outcome of the case; the witness's candor, fairness and intelligence; the witness's opportunity and ability to see or hear or know things that the witness testified about; the quality of the witness's memory; and whether the witness's testimony has been supported or contradicted by other credible evidence. You may accept or reject the testimony of any witness in whole or in part.

A witness may be "impeached," or discredited, by a showing that the witness testified falsely concerning some important fact, or by evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because

people may forget some things or remember other things inaccurately. So if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact, or only with an unimportant detail. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—an expert witness—is permitted to state an opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read and/or shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

In deciding the facts of this case, you must not be swayed by bias, prejudice, or favor as to any party. Our system of law does not permit jurors to be governed by prejudice, sympathy, or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

<h2 style="text-align:center">SPECIFIC INSTRUCTIONS</h2>

You must decide whether Reaux has proven that Stryker infringes claims 1-7 and 9-15 of United States Patent No. 7,540,039 ("the '039 patent") in connection with the method of manufacture of Stryker's Steri-shield® T5 hoods and togas, and T6 (also called Flyte) hoods and togas ("the accused products"). Reaux alleges that Stryker is infringing the '039 patent by using the methods described in claims 1-7 and 9-15 of the '039 patent. Reaux also maintains that Racing Optics induces and contributes to Stryker's infringement of these claims of the '039 patent by its cooperation with Stryker's development of the accused products and its sale of laminated stacks of peel away lenses used in the method of manufacturing the accused products. The Defendants deny that they have infringed, induced or contributed to the infringement of the asserted claims of the '039 patent. Defendants also allege that the '039 patent is invalid.

**Patent Claims: Independent and Dependent Claims**

Only the claims of a patent can be infringed. Neither the written description nor the drawings of a patent can be infringed. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims. But it is the

claims alone that define the scope of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Patent claims are either independent or dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 is the only independent claim of the '039 patent in issue.

A "dependent claim" does not itself recite all of the requirements of the claim, but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A process that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim. In this case, claims 2-7 and 9-15 are all dependent claims, because each of those claims refers to claim 1, or to another dependent claim that refers to claim 1.

In order to find infringement of dependent claims 2-7 and 9-15 of the '039 patent, you must first determine whether independent claim 1 of the patent has been infringed. If you decide that independent claim 1 was not infringed, then a claim dependent on claim 1 could not have been infringed. If you decide that independent claim 1 was infringed, you must then separately determine whether each additional requirement of each dependent claim asserted has also been included in the accused product or method of making that product. If each additional requirement has been included, then the dependent claim has been infringed.

**Court's Claim Construction**

It is the Court's job to tell you what the words of the patent claims mean. To that end, I have provided you with a chart stating the claim constructions that control in this case. The meaning of the claim words I have provided to you must control your deliberations on the issues of patent infringement and patent invalidity.

Note that the beginning, or preamble, of claim 1 uses the word "comprising." "Comprising" means "including" or "containing, but not limited to." If you decide that Stryker's product(s) includes all the requirements in claim 1, that claim is infringed. This is true even if the accused product(s) includes other components or is made by other steps in addition to those requirements. For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

**Direct Infringement—Asserted by Reaux Medical only against Stryker**

A patent claim may be directly infringed in one of two ways. A claim may be "literally" infringed or it may be infringed under the "doctrine of equivalents." Reaux claims Stryker, not Racing Optics, literally infringed the '039 patent; alternatively, Reaux alleges that Stryker, not Racing Optics, infringed its patent under the doctrine of equivalents.

*Literal Infringement*

You must decide whether Stryker has sold or offered for sale within the United States a product made by the method covered by claims 1-7 and 9-15 of the '039 patent. You must compare each claim to the method used to produce the accused products to determine whether every requirement of the asserted claim is included in the accused products.

All of the asserted claims of the '039 patent are method claims; that is, they describe a method for making a specific product using certain method steps and certain physical components. If the method of manufacturing the accused products does not use one or more of the claimed method steps, or does not use one or more of the claimed physical components, that method or the resulting accused product cannot literally infringe that claim.

For literal infringement, Reaux Medical is not required to prove that Stryker intended to infringe or knew of the patent.

### Doctrine of Equivalents

If you decide that the methods of making Stryker's accused products do not literally infringe an asserted patent claim, you must then decide whether the method of making those products infringes the asserted claims under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, every element of a patent claim must be considered separately and given effect. The doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. In order to prove infringement by "equivalents," Reaux must prove that any element of the claimed method not present literally in the method of making the accused products is present equivalently.

A step of a method (or a component used in a method step) can be equivalent to a claimed requirement if a person of ordinary skill in the art would think that the differences between the step (or component) and the claimed requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference is insubstantial is to consider whether, as of the time of the alleged infringement, the step of the method (or the component used in that step) performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

If a substantial equivalent of a missing claim element is present in the method of making the accused products, then the method can infringe the claimed method. However, if the method of making the accused products does not use or is missing even one element of the patent claim, and an equivalent of that missing claim element is not present, then there can be no infringement under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted method claim and decide whether the individual steps of the method of making the accused products (including the components used to practice each method step) are identical or insubstantially different.

The proper time for evaluating equivalency—and thus knowledge of interchangeability between requirements—is the time of infringement, not the time the patent was issued. Under the doctrine of equivalents, those of ordinary skill in the art do not have to know of the equivalent when the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

You may not find that a step in the method of manufacturing the accused products (or a component used in that step) is equivalent to a patent claim requirement if, by doing so, the patent claim would cover methods that were already in the prior art.

When a patent discloses subject matter but does not claim it, the patentee has dedicated that unclaimed subject matter to the public. If you find that the '039 patent discloses, but does not claim, subject matter alleged to be equivalent to an element of the patent claim, then you cannot find that the method step (or the component used in that method step) is equivalent to that

element of the patent claim. This is true even if the failure to claim the subject matter was wholly unintentional. Accordingly, you may not find that a method step (or component used in the method step) is equivalent to a claim requirement if you find that: (1) the method step is not covered literally by any of the claims of the patent; and (2) the allegedly "equivalent" method step (or component used therein) was described somewhere in the patent.

Finally, you may not determine that an alternative method step (or a component used therein) is equivalent to a requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. In other words, the allegedly "equivalent" step cannot eliminate, ignore, or render useless an element that is specifically required by the claim.

## Indirect Infringement

Reaux alleges that Racing Optics indirectly infringed the '039 patent. There are two types of indirect infringement: (1) inducing infringement, and (2) contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with specialty components for use in the patented method, is called "contributory infringement."

### *Inducing Infringement*

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

To show that Racing Optics induced patent infringement, Reaux must have proven the following occurred after the issuance of the '039 patent on June 2, 2009:

1) Racing Optics actively encouraged or instructed Stryker how to perform a process in a way that infringes at least one patent claim;

2) Racing Optics must have known about the existence of the '039 Patent, or have believed that there was a high probability that a patent existed but took deliberate actions to be willfully blind as to its existence to avoid learning about the patent;

3) Racing Optics knew, or should have known at the time, that its encouragement or instructions would result in infringement of at least one patent claim; and

4) Stryker infringed at least one patent claim. Reaux must prove that Racing Optics knowingly induced infringement, not merely that Racing Optics knowingly induced the acts that constitute infringement. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use, or instructing how to engage in an infringing use.

The sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, does not, in and of itself, constitute inducement of infringement.

### *Contributory Infringement*

Contributory infringement occurs when a party with knowledge of the patent supplies a part, or a component, to another for use in a product, machine, or process that infringes a patent claim.

Reaux argues that Racing Optics is liable for contributory infringement by contributing to the direct infringement of the '039 patent.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis; that is, Reaux must prove that each of the following requirements is met:

1) during the time the '039 patent has been in force, Racing Optics has sold, offered to sell, or imported within the United States a material component for use in a process;

2) the component is not a staple article of commerce capable of a substantial, noninfringing use;

3) the component constitutes a material part of the alleged invention claimed by the '039 patent;

4) Racing Optics was aware of the '039 patent, and knew that the material component it sold has no other substantial use other than in the method claimed by the '039 patent; and

5) the use of the component resulted in direct infringement of the method claim.

A "staple article of commerce capable of a substantial, noninfringing use" is something that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental or hypothetical.


**Willful Infringement**

If you find by a preponderance of the evidence that Defendants Stryker and/or Racing Optics infringed, induced infringement, or contributed to infringement of the '039 patent, then you must further determine if the infringement was willful.

When considering Stryker or Racing Optics's conduct, you must decide whether Reaux has proven it is highly probable that Stryker or Racing Optics's conduct was reckless; that is, that these Defendants proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent.

If you conclude that Reaux has proven that Stryker or Racing Optics's conduct was reckless, then you must determine whether Reaux proved that the unjustifiably high risk of infringement was known or so obvious that it should have been known to Stryker or Racing Optics. Willfulness must be proven by clear and convincing evidence showing:

1) Whether one or both of the Defendants were aware of the '039 patent,

2) Whether one or both of the Defendants acted despite an objectively high likelihood that their actions infringed a valid patent, and

3) This objectively high likelihood of infringement was either known or so obvious that it should have been known to one or both of the Defendants.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to, whether the Defendants intentionally copied the claimed invention produced by the '039 patent, and whether the Defendants presented a substantial defense to infringement, including the defense that the patent is invalid.

**Invalidity**

Patent invalidity is a defense to patent infringement. A patent issued by the United States Patent and Trademark Office, and each claim in it, is presumed to be valid. To rebut this presumption, Defendants must establish by clear and convincing evidence that the relevant claims of the '039 patent are invalid. Even though a patent examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

The Defendants contend that claims 1-7 and 9-15 are invalid for the following reasons:

1) The '039 patent claims are anticipated and/or obvious in view of prior art, that is face and eye covering devices and the corresponding methods of manufacture. Specifically, Defendants contend that United States Patent No. 6,990,691 ("the Klotz patent") teaches the claimed method of manufacturing face and eye covering devices.

2) Alternatively, the '039 patent claims were obvious in view of the Klotz patent and United States Patent Nos. 6,481,019 ("the Diaz patent") and 6,536,045 ("the Wilson patent"), in view of the teachings of United States Patent No. 4,889,754 ("the Vargas patent").

3) Alternatively, the '039 patent claims were obvious in view of certain laminated stack products sold by Racing Optics ("the Racing Optics Stacks") and the Stryker T4 device.

I will now explain to you each of Defendants' asserted grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately. As you consider these issues, remember that Stryker and Racing Optics bear the burden of proving invalidity by clear and convincing evidence.

### *Date of Invention Defined*

You must determine the date of invention for the claimed method of manufacturing a face and eye covering device. The date of invention is either (1) when the invention was reduced to practice or (2) when it was conceived, provided the inventor was diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary

skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or that he actually explained his invention to another person. But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose, or when the inventor files a patent application. An invention may also be considered reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

Under the patent laws, the date of invention is generally the date that the patent application was filed. In this case, that date is June 18, 2004. Ordinarily, art dated before June 18, 2004 is prior art to the patent claims.

There is, however, a circumstance under which art dated before the application filing date is not prior art. This occurs when the inventor of the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

Because Reaux claims a date of invention prior to June 18, 2004, it is Reaux's burden to prove an earlier date of alleged invention; that is, an earlier date of reduction to practice. To do so, Reaux must prove that every element of the claimed method of the '039 patent was reduced to practice on an earlier date. It is not enough that some of the elements of a claim were reduced

to practice earlier.  Additionally, the inventor's reduction to practice evidence—or the oral testimony of the inventor's relatives or friends—alone is not enough evidence.  It must be corroborated by independent evidence, such as documents showing the claimed methods of manufacture.

Here, Plaintiff argues that the date of invention of the method described in the '039 patent is June 19, 2003, which is the filing date of Provisional Application No. 60/479,652 ("the '652 provisional").  To prove that the date of invention of the method described in the '039 patent is June 19, 2003, Reaux must establish that the specification of the '652 provisional contains a written description of the claimed method in such full, clear, concise, and exact terms, as to enable a person of ordinary skill in the art to practice the method claimed in the '039 patent.

### *Prior Art*

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.

Prior art includes any of the following items received into evidence during trial:

1) Patents filed before the date of invention of the '039 patent, or patents that issued more than one year before the filing date of the patent;

2) Publications having a date more than one year before the filing date of the patent or before the invention was made;

3) Any product or method that was publicly known or used by others in the United States before the patented invention was made;

4)   Any product or method that was in public use or on sale in the United States more than one year before the patent was filed; and

5)   Any product or method that was made by anyone before the named inventor created the patented product or method where the product or method was not abandoned, suppressed, or concealed.

### *Anticipation by the Prior Art*

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.

In this case, the Defendants contend that claims 1-7 and 9-15 are invalid as anticipated because these claims were described in prior art United States Patent No. 6,990,691 ("the Klotz patent").

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior patent, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent.

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently resulted from its practice.  This is called "inherency."  To establish inherency, the evidence must make clear that the missing descriptive matter necessarily resulted

from prior art and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed.

### Obviousness

Even though an invention may not have been identically disclosed or described in prior art before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

The Defendants also contend that claims 1-7 and 9-15 of the '039 patent are invalid because the claimed invention is "obvious." Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether the Defendants have established that the claimed invention is obvious:

1) The level of ordinary skill in the art someone would have had at the time the invention of the '039 patent was made.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems. In deciding what the level of ordinary skill in the field of the '039 patent is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

2) The scope and content of the prior art relied upon by the Defendants.

This includes whether the invention would have been obvious considering prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar with to solve the problem, like fitting together the pieces of a puzzle. Prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

   3)  The difference or differences, if any, between the claimed invention and the prior art from the viewpoint of a person of ordinary skill in the art at the time of the invention.

Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Moreover, the elements of the references need not be capable of being physically or bodily combined without modification. Also, whether two references were designed to resolve

different problems does not bear on whether it would have been obvious (or not) to combine them.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.

Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may be found in written references including the prior art itself. However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

You must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact. You should put yourself in the position of a person of ordinary

skill in the field of the invention at the time the claimed invention was made, and you should not consider what has become known since or what is learned from the teaching of the patent.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

Factors tending to show nonobviousness:

1. commercial success of a product due to the merits of the claimed invention;
2. a long-felt, but unsolved, need for the solution provided by the claimed invention;
3. unsuccessful attempts by others to find the solution provided by the claimed invention;
4. copying of the claimed invention by others;
5. unexpected and superior results from the claimed invention;
6. acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;
7. disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and
8. other evidence tending to show nonobviousness.

Factors tending to show obviousness

1. independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and
2. other evidence tending to show obviousness.

You may consider the presence of any of the eight factors tending to show nonobviousness, as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. And you may consider the presence of the two factors tending to show obviousness as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

**Reasonable Royalty**

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer, just before the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.

In determining this, you must assume that both parties believed the patent was valid and infringed, and that they were willing to enter into an agreement, although in real life this may not have been the case. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer allegedly first infringed the patent and the facts that existed at that time. In this case, that is on or just before June 2, 2009, the date the patent issued. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties on or just before June 2, 2009.

In determining the reasonable royalty that would have resulted from the hypothetical negotiation, you should consider all the facts known and available to the parties at the time the

infringement began. Some of the kinds of factors that you may consider in making your

determination, if there was evidence of them, are:

- Licenses or offers to license the patent at issue in this case.
- Licenses involving comparable patents.
- The licensing history of the parties.
- Licensing practices in the relevant industry.
- Whether the patent owner had an established policy of refusing to license the patent at issue.
- The relationship between the patent owner and alleged infringer, including whether or not they were competitors.
- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit.
- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives.
- The duration of the patent and the term of the license.
- The established profitability of the product made under the patents, its commercial success, and its current popularity.
- The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.
- The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.
- The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
- The opinion and testimony of qualified experts.
- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive and you can and should consider any evidence that has been

presented to you in this case on each of these factors. Any evidence that you rely upon for

purposes of determining a reasonable royalty rate must be sufficiently comparable to the

hypothetical license at issue.  Once you determine what the reasonable royalty is, that royalty

should be applied to that portion of the revenue of the accused products that is attributable to the

patented technology.

**Trade Secret Misappropriation**

A "trade secret" means the whole or any part of any scientific or technical information, design, process, procedure, formula or improvement that has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes. A trade secret must give the owner an opportunity to obtain an advantage over competitors who do not know or use it.

Plaintiff alleges that it was in possession of the following specific trade secrets and only these are alleged by Reaux Medical to have been misappropriated.

1) Pricing information of $1.00 to $1.50 per foot of specialty order laminated product;

2) Supplier information, specifically, the name of Racing Optics's supplier, Bekaert ("BSF");

3) Prototype examples of a face mask device of Trial Exhibit P-94A;

4) Finalized Mil Thicknesses Peel-Away vs. Non-Peel-Away Lens of greater than or equal to 4 mils for the base layer and 2 mils for the peel-away layers;

5) Window and Roll Size Dimensions (Ratios) of 77% of the window is allocated to the adhesive lane.

In determining whether Reaux has proven by a preponderance of the evidence that it possessed specific, identifiable trade secrets, you may consider the following factors: (1) the extent to which the information was known outside of Reaux's business; (2) the extent to which the information was known by employees and others involved in Reaux's business; (3) the extent of measures taken by Reaux to guard the secrecy of the information; (4) the value of the information to Reaux and its competitors; (5) the amount of effort or money expended by Reaux in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business, or disclosed in a public filing, such as a patent. Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to people who are not obligated to keep it secret.

Therefore, if Reaux Medical voluntarily disclosed information or failed to take reasonable precautions to ensure secrecy of the information, then Reaux Medical cannot claim that the information constitutes a trade secret, even if it otherwise could have been a trade secret. If Reaux Medical or Brian Reaux disclosed the alleged trade secret to others who were under no obligation to protect the confidentiality of the information, then the right to the trade secret is extinguished.

To prove that Racing Optics and/or Stryker misappropriated Reaux's alleged trade secrets, Reaux must prove each of the following elements: (1) the existence of trade secrets that were owned by Reaux, and that Racing Optics and/or Stryker knew or should have known they were trade secrets; (2) that Racing Optics and/or Stryker breached a confidential relationship with Reaux, or discovered the trade secrets by improper means; (3) that Racing Optics and/or Stryker used or disclosed the trade secrets without authorization from Reaux; and (4) that Reaux suffered damages as a result of the misappropriation.

"Use" of a trade secret means commercial use, by which a person seeks to profit from the use of the secret.

Reaux Medical does not allege that Stryker had a direct confidential relationship with Reaux Medical. Accordingly, for Stryker to be liable for trade secret misappropriation, Reaux Medical must prove that Stryker knew or should have known of the existence of the alleged trade secret, and obtained knowledge of the trade secret by improper means. Plaintiff must establish

that: (1) Stryker learned of Reaux Medical's trade secret from Racing Optics with notice that it was a secret owned by Reaux Medical or Brian Reaux and (2) that Stryker knew or should have known that Defendant Racing Optics's disclosure of it was otherwise a breach of duty to Reaux Medical or Brian Reaux. If Racing Optics had no duty to Reaux Medical, or if Stryker had no notice of the existence of the trade secret from Reaux Medical, then Stryker cannot be liable for trade secret misappropriation.

## Damages for Trade Secret Misappropriation

By instructing you on damages, I do not suggest that one or the other party should prevail. These instructions are provided to guide you on the calculation of damages in the event you find trade secret misappropriation and thus must address damages.

The purpose of compensatory damages is to make Reaux Medical whole—that is, to compensate the Plaintiff for any damage that it has suffered from any trade secret misappropriation. The damages that you award must be fair compensation for all of Reaux Medical's damages for trade secret misappropriation, no more and no less.

You may impose damages solely upon the Defendant or Defendants that you find are liable. Although there are two Defendants, it does not necessarily follow that if one is liable, that the other is also liable. Each Defendant is entitled to fair, separate and individual consideration without regard to your decision as to the other Defendant. If you find that only one Defendant is responsible for a particular injury, then you must award damages for that injury only against that Defendant. Plaintiff must establish its damages with respect to each Defendant independently.

You may award damages only for injuries that Reaux Medical proves were proximately caused by the allegedly wrongful conduct you found. "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not

have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person or entity using the degree of care required of him or it would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Damages are not allowed as a punishment and cannot be imposed or increased to penalize a Defendant. You should not award damages for speculative injuries, but only for those injuries which Reaux Medical has actually suffered, or that it is reasonably likely to suffer in the future.

If you decide to award damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

If Reaux Medical proves that Racing Optics and/or Stryker misappropriated its trade secrets, then Reaux Medical is entitled to recover damages if the misappropriation proximately caused Reaux Medical to suffer an actual loss.

Reaux Medical cannot recover lost profits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise.

For Questions 1-4, 6-9, and 12-17, Plaintiff bears the burden of proof by a preponderance of the evidence.

For Questions 5, 10, and 18, Plaintiff bears the burden of proof by clear and convincing evidence.

For Questions 11(a) and 11(b), Defendants bear the burden of proof by clear and convincing evidence.

**Question 1**

Did Stryker Corporation literally infringe claim 1 of the '039 patent? Answer "yes" or "no".

Claim 1         NO

**If your answer to Question 1 is "no", proceed to Question 3.**

**If your answer to Question 1 is "yes", proceed to Question 2.**

## Question 2

Did Stryker Corporation literally infringe any of the following claims of the '039 patent?

Answer "yes" or "no" as to each claim.

Claim 2 _____

Claim 3 _____

Claim 4 _____

Claim 5 _____

Claim 6 _____

Claim 7 _____

Claim 9 _____

Claim 10 _____

Claim 11 _____

Claim 12 _____

Claim 13 _____

Claim 14 _____

Claim 15 _____

**Proceed to Question 3.**

**Only if you answered "yes" to Question 1, skip Question 3 and proceed to Question 4.**

## Question 3

Did Stryker Corporation infringe, under the doctrine of equivalents, claim 1 of the '039 patent? Answer "yes" or "no".

Claim 1     <u>NO</u>

**If your answers to Questions 1 and 3 are both "no", proceed to Question 11(a).**

**Only if your answer to Question 3 is "yes", proceed to Question 4.**

**Answer Question 4 only for those claims as to which you answered "no" in response to Question 2.**

## Question 4

Did Stryker Corporation infringe, under the doctrine of equivalents, any of the following claims of the '039 patent? Answer "yes" or "no" as to each claim.

| | |
|---|---|
| Claim 2 | _____ |
| Claim 3 | _____ |
| Claim 4 | _____ |
| Claim 5 | _____ |
| Claim 6 | _____ |
| Claim 7 | _____ |
| Claim 9 | _____ |
| Claim 10 | _____ |
| Claim 11 | _____ |
| Claim 12 | _____ |
| Claim 13 | _____ |
| Claim 14 | _____ |
| Claim 15 | _____ |

**If you answered "yes" as to any claims in your answers to Questions 1, 2, 3, or 4, proceed to Question 5 as to all claims as to which you answered "yes" in Questions 1, 2, 3, or 4. Otherwise, proceed to Question 11(a).**

## Question 5

Was the infringement you have found in answer to any part of Questions 1-4 willful? Answer "yes" or "no" as to the corresponding claim(s) as to which you answered "yes" in answer to Questions 1, 2, 3, or 4.

Claim 1 _____

Claim 2 _____

Claim 3 _____

Claim 4 _____

Claim 5 _____

Claim 6 _____

Claim 7 _____

Claim 9 _____

Claim 10 _____

Claim 11 _____

Claim 12 _____

Claim 13 _____

Claim 14 _____

Claim 15 _____

**If you answered "yes" in answer to *either* Question 1 or 3, proceed to Question 6.**

**If you answered "no" in answer to *both* Questions 1 and 3, proceed to Question 11(a).**

**Question 6**

Did Racing Optics induce Stryker to infringe claim 1 of the '039 patent? Answer "yes" or "no".

      Claim 1      _____

**If your answer to Question 6 is "yes", proceed to Question 7.**

**If your answer to Question 6 is "no", proceed to Question 8.**

## Question 7

Did Racing Optics induce Stryker to infringe the following claims of the '039 patent?

Answer "yes" or "no" as to each claim as to which you answered "yes" in Question 2.

| | |
|---|---|
| Claim 2 | _____ |
| Claim 3 | _____ |
| Claim 4 | _____ |
| Claim 5 | _____ |
| Claim 6 | _____ |
| Claim 7 | _____ |
| Claim 9 | _____ |
| Claim 10 | _____ |
| Claim 11 | _____ |
| Claim 12 | _____ |
| Claim 13 | _____ |
| Claim 14 | _____ |
| Claim 15 | _____ |

**Proceed to Question 8.**

**Question 8**

Did Racing Optics contribute to the infringement of claim 1 of the '039 patent? Answer "yes" or "no".

Claim 1          _____

**If your answer to Question 8 is "yes", proceed to Question 9.**

**If your answer to Question 8 is "no", proceed to Question 11(a).**

## Question 9

Did Racing Optics contribute to the infringement of the following claims of the '039 patent? Answer "yes" or "no" as to each claim as to each claim as to which you answered "yes" in Question 2.

Claim 2      _____

Claim 3      _____

Claim 4      _____

Claim 5      _____

Claim 6      _____

Claim 7      _____

Claim 9      _____

Claim 10     _____

Claim 11     _____

Claim 12     _____

Claim 13     _____

Claim 14     _____

Claim 15     _____

**If you answered "yes" as to any claims in your answers to Questions 6, 7, 8, or 9, proceed to Question 10 as to all claims as to which you answered "yes" in Questions 6, 7, 8, or 9.  Otherwise, proceed to Question 11(a).**

## Question 10

Was the infringement you have found in answer to any part of Questions 6-9 willful? Answer "yes" or "no" as to the corresponding claim(s) as to which you answered "yes" in answer to Questions 6, 7, 8, or 9.

Claim 1      _____

Claim 2      _____

Claim 3      _____

Claim 4      _____

Claim 5      _____

Claim 6      _____

Claim 7      _____

Claim 9      _____

Claim 10      _____

Claim 11      _____

Claim 12      _____

Claim 13      _____

Claim 14      _____

Claim 15      _____

## Question 11(a)

Is claim 1 of the '039 patent invalid for any of the following reasons? Answer "yes" or "no" as to each.

(1)   Anticipated by prior art, that is, the Klotz '691 patent.

 No

(2)   Obvious in light of prior art, that is, the Klotz '691 patent, the Diaz '019 patent, the Wilson '045 patent, and the Vargas '754 patent.

 No

(3)   Obvious in light of prior art, that is, the Racing Optics Stacks and the Stryker T4 device.

 Yes

**If you answered "yes" as to any part of Question 11(a), proceed to the same subpart for Question 11(b).  Otherwise, proceed to Question 12.**

## Question 11(b)

Are any of the following claims of the '039 patent invalid for any of the following reasons? Answer "yes" or "no" as to each claim.

(1) Anticipated by prior art, that is, the Klotz '691 patent.

| | | |
|---|---|---|
| Claim 2 _____ | Claim 7 _____ | Claim 13 _____ |
| Claim 3 _____ | Claim 9 _____ | Claim 14 _____ |
| Claim 4 _____ | Claim 10 _____ | Claim 15 _____ |
| Claim 5 _____ | Claim 11 _____ | |
| Claim 6 _____ | Claim 12 _____ | |

(2) Obvious in light of prior art, that is, the Klotz '691 patent, the Diaz '019 patent, the Wilson '045 patent, and the Vargas '754 patent.

| | | |
|---|---|---|
| Claim 2 _____ | Claim 7 _____ | Claim 13 _____ |
| Claim 3 _____ | Claim 9 _____ | Claim 14 _____ |
| Claim 4 _____ | Claim 10 _____ | Claim 15 _____ |
| Claim 5 _____ | Claim 11 _____ | |
| Claim 6 _____ | Claim 12 _____ | |

(3) Obvious in light of prior art, that is, the Racing Optics Stacks and the Stryker T4 device.

| | | |
|---|---|---|
| Claim 2 Yes | Claim 7 Yes | Claim 13 Yes |
| Claim 3 Yes | Claim 9 Yes | Claim 14 Yes |
| Claim 4 Yes | Claim 10 Yes | Claim 15 Yes |
| Claim 5 Yes | Claim 11 NO | |
| Claim 6 Yes | Claim 12 Yes | |

**Proceed to Question 12.**

**If you answered "yes" to any part of Questions 1-4, answer Question 12.  Otherwise, proceed to Question 13.**

### Question 12

What is the reasonable royalty that Reaux Medical would have received from Stryker had Reaux Medical and Stryker negotiated for Stryker's use of the methods covered by the '039 patent, at or just before the time the '039 patent issued on June 2, 2009?

Answer in dollars and cents, or zero.

$_____

**Proceed to Question 13.**

**If you answered "yes" to any part of Questions 6-9, answer Question 13.  Otherwise, proceed to Question 14.**

### Question 13

What is the reasonable royalty that Reaux Medical would have received from Racing Optics had Reaux Medical and Racing Optics negotiated for Racing Optics's use of the methods covered by the '039 patent, at or just before the time the '039 patent issued on June 2, 2009?

Answer in dollars and cents, or zero.

$_____

**Proceed to Question 14.**

**Question 14**

Did Reaux Medical possess and protect trade secrets? Answer "yes" or "no".

_____Yes_____

**If you answered "yes" proceed to Question 15.**

**If you answered "no", you have no further Questions to answer.  The foreperson**
**should sign and date the verdict form at page 52.**

## Question 15

Did (a) Stryker or (b) Racing Optics misappropriate any trade secrets disclosed to them by Reaux Medical? Answer "yes" or "no" as to each Defendant.

(a) Stryker

 No

(b) Racing Optics

 Yes

**If you answered "yes" to any part of Question 15, proceed to Question 16.**

**If you answered "no" to both subparts of this question, you have no further Questions to answer.  The foreperson should sign and date the verdict form at page 52.**

## Question 16

What sum of money, if any, would fairly and reasonably compensate Reaux Medical for actual damages, if any, that were proximately caused by the misappropriation of trade secrets of Reaux Medical by Stryker and/or Racing Optics found by you in answer to Question 15? Do not add any amount for interest. Answer in dollars and cents, or none, as to any subpart as to which you answered "yes" in answer to Question 15.

(a) Stryker

Answer: $ _____0_____

(b) Racing Optics

Answer: $ __285,000.00__

**Proceed to Question 17.**

**Question 17**

By what date should Reaux Medical, in the exercise of reasonable diligence, have discovered the misappropriation found by you in answer to Question 15(a) or (b)?

Answer with a specific month, day, and year, as to any subpart as to which you answered "yes" in response to Question 15.

(a)  Stryker

_____

(b)  Racing Optics

February 1, 2006

**Proceed to Question 18.**

**Question 18**

Do you find by clear and convincing evidence that misappropriation found by you in response to Question 15(a) or (b) resulted from malice?  "Malice" means a specific intent to cause substantial injury or harm to Reaux Medical.  Answer "yes" or "no" as to either subpart as to which you answered "yes" in response to Question 15.

(a) Stryker

_____

(b) Racing Optics

_No_ _____

**You have no further Questions to answer.  The foreperson should sign and date the verdict form at page 52.**

## FINAL INSTRUCTIONS

To reach a verdict, all of you must agree. Your verdict must be unanimous. Your deliberations will be secret. You will never have to explain your verdict to anyone.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case. Remember that in a very real way you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

I want to advise you that although our court reporter has taken down all of the testimony, it is not done in such a way that we can read back or furnish testimony to you at your request. Only when you have a specific disagreement as to a particular witness's testimony on a specific subject can we attempt to obtain that information for you.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer. I will always first show the attorneys your question and my response before I answer your question. I will either reply to you in writing or bring you back into the courtroom to answer your message. I caution you, however, with respect to any message or question you might send, that you should never state or specify your numerical division at the time.

When you retire to the jury room to deliberate, you will be given this charge and the exhibits that the Court has admitted into evidence. You should select one of your members as your foreperson, who will help to guide your deliberations and will speak for you here in the

courtroom.  During your deliberations you will set your own work schedule, deciding for

yourselves when and how frequently you wish to recess and for how long.  If you recess during

your deliberations, follow all of the instructions that I have given you concerning your conduct

during the trial.  After you have reached a unanimous verdict, your foreperson must fill in your

answers to the written questions and sign and date the verdict form.  Unless instructed otherwise,

you are not to disclose your numerical division on any question.  Finally, do not reveal your

answers to the questions until I direct you to do so.

**DATED**:  ___5-1-12___

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS